IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

DEREK WHITNEY                                                                    PLAINTIFF

V.                                               CIVIL ACTION NO.2:05CV110-WAP-JAD

OTIS TAYLOR, et al                                         DEFENDANTS

## REPORT AND RECOMMENDATION

The sole remaining defendant, Charles Jackson, a corrections officer, has moved for summary judgment (Doc. 51) on Whitney's claim that Jackson used excessive force in an incident that occurred at Tallahatchie County Correctional Facility. Whitney has filed no response in opposition.

## SUMMARY JUDGMENT STANDARDS

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Rule 56(e) Fed.R.Civ.P. requires that materials supporting or opposing the motion be admissible at trial. Material that would be inadmissible cannot be considered on a motion for summary judgment since it would not establish a genuine issue of material fact.

Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof. A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir.1988) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265(1986) If the party with the burden of proof cannot produce any summary judgment evidence on an essential

element of his claim, summary judgment is required. *Geiserman v. MacDonald,* 893 F.2d 787, 793(5th Cir. 1990).

The moving party must make an initial showing that there is no dispute of material fact or that there is a failure of proof of an element of the claim. If this showing is made, the non-movant must go beyond pleadings and submit specific evidence showing that there are one or more genuine issues of fact to be resolved by trial. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(emphasis omitted). While all facts are considered in favor of the non-moving party, including all reasonable inferences therefrom, *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995), the nonmovant's burden, "is not satisfied with 'some metaphysical doubt as to the material facts,' *Matsushita,* 475 U.S. at 586, 106 S. Ct. at 1356, by 'conclusory allegations,' *Lujan,* 497 U.S. at 871-73, 110 S.Ct. at 3180, by "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir.1994), or by only a "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir.1994)." *Little v. Liquid Air Corp.* at 1075.[1] Summary judgment is appropriate if "critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Armstrong v. City of Dallas,* 997 F.2d 62 (5th Cir.1993). If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted.

These standards have been applied in evaluating the evidence of record in support of and opposition to the motion for summary judgment.

---

[1] Quoting from *Matsushita Electric Indus.Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed. 2d 538(1986) and *Lujan v. National Wildlife Federation*, 497 U.S. 871, 110 S.Ct. 3177, 111L.Ed.2d 695(1990).

ANALYSIS

Whitney claims that Jackson and the now dismissed corrections officer Taylor used excessive force against him. The core judicial inquiry for a claim of excessive force by an inmate is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. The extent of injury suffered by an inmate is one factor that may suggest whether the use of force could have been thought necessary or instead evinced wantonness or knowing willingness to inflict injury. In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

There are certainly factual disputes set forth in the record regarding what occurred. According to Whitney's complaint on April 24, 2005 he was at the pill call window. He claims Jackson and former defendant Taylor were both present. He claims that Taylor without provocation claimed that Whitney had said inappropriate things in a conversation with another security officer. Whitney claims that for reasons unknown to him, Taylor handcuffed him and threw him to the concrete floor causing a split in Whitney's skin over his left eye. He claims that Taylor then proceeded to beat him in the face making the wound worse. Jackson is accused of grabbing Whitney's legs and feet twisting them and hitting Whitney upon his legs and knees, "causing bruises and injuring" his knees. Whitney claims that shortly thereafter another correctional officer started videotaping the incident showing "plaintiff's massive blood loss", his blooded body, and Plaintiff's injuries. He claims that the resulting facial scar is about one inch by one-half inch.

Jackson's unrebutted proof is that Whitney is known to be a constant behavior problem at TCCF. He has received multiple RVR's and been placed in segregation at least four times. He is known to display violent tendencies toward the staff of TCCF. Jackson for his part states that while he had not personally witnessed any aggressive actions by Whitney prior to this incident, it was common knowledge within the facility that Whitney was a behavior problem and a security risk. Jackson's account of the incident starts with him noticing and responding to a disturbance at the pill call window. He claims that on his arrival Whitney was cursing and yelling. In accordance with Taylor's order, Jackson put Whitney in handcuffs. Per Jackson, when Whitney became increasingly belligerent and Taylor was unable to calm him, Taylor decided that Whitney should be taken to segregation.

Jackson took Whitney by the left arm, with Taylor on his right. According to Jackson, the videotaping then commences, capturing the take down and injury to Whitney. According to Jackson, he felt Whitney going to the floor as Taylor initiated the take-down. Jackson says he gave Whitney a slight push. Jackson says that he never put his weight into the take-down. He claims to have stooped over Taylor and Whitney to see if Taylor had the inmate controlled. He claims the inmate was kicking and twisting and pushing with his legs and feet. Jackson says that he secured Whitney's legs briefly. When Whitney quit resisting he was brought to his feet and taken for medical attention. After treatment Whitney was returned to his cell.

The defense has submitted the videotape of the incident. It is time stamped beginning at 5:53 a.m. The videotape shows Whitney handcuffed and held by the two correctional officers going down the hall, with the camera operator trailing. Whitney pulls and jerks against the hold of Taylor trying to turn around to speak to the video camera. The videotape is consistent with Jackson's

4

contention that Taylor initiated the takedown. The videotape does not show precisely everything that happens in the approximately one minute incident as the camera is not directly pointed at Whitney during the entire time and the view is obstructed by a third correctional officer who came to the assistance of Taylor and Jackson. The tape does not conclusively establish when Whitney sustained the head injury since his face is not fully seen prior to the take down, but Whitney is not screaming or indicating that he has already been beaten. Immediately after the take down, Whitney commences to screaming while on the floor. Jackson and the unidentified officer both appear at different times to be holding Whitney's legs down. In a minute's time, Whitney is up and escorted to medical, where he is seen by a nurse, after leg restraints are put on him. He is videotaped sitting on an examination bed. There are small patches of blood on his shirt. By 6:04 a.m. he is seen walking calmly without any apparent difficulty or discomfort between two correctional officers. He is stripped down and back in his cell by 6:12 a.m.

Whitney's pleadings are somewhat ambiguous as to the time frame. He does not make it clear whether he is contending that there was a take down and 'beating' that is not on videotape, but his allegations are consistent with Jackson on the only point critical to the determination of the motion for summary judgment: Jackson did not throw him to the floor, and Jackson did not beat him about the face and worsening that injury. Jackson is accused of twisting Whitney's legs and kicking him. It is not necessary to resolve the ambiguity about whether the assault on Whitney is what is videotaped, though it certainly appears to be.

The bruises and other unspecified injuries Whitney claims to have sustained as a result Jackson's actions are *de minimus* injuries that will not support a claim for compensatory damages nor a finding of excessive force.

5

Under 42 U.S.C.A. § 1997e(e) "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury." See *Geiger v. Jowers*, 404 F.3d 371(5th Cir. 2005)(The requirement of a physical injury as a prerequisite to a claim for compensatory damages is not dependent upon the nature of the underlying constitutional claim; affirming the dismissal of a claim for First Amendment violations)**;** *Brown v. Hembest*, 2005 WL 1174661(N.D. Miss. 2005)(Pro se complaint alleging failure to prevent inmate on inmate violence dismissed partly due to failure to allege any physical injury); *Brown v. Sudduth*, 2005 WL 2406090(N.D. Miss. 2005) ("As ... Brown seeks only money damages, and as he has not alleged physical injury, his claims for compensatory damages must fail." *Id.* at 4.); *Jones v. Greninger,* 188 F. 3d 322(5th Cir. 1999)(Eighth Amendment claim for damages for failure to protect properly dismissed for failure to allege physical injury).

While the above cases are helpful in ruling on whether particular injuries are more than *de minimus*, one district court case has enunciated a common sense test for what constitutes a *de minimus* injury. In *Luong v. Hatt*, 979 F.Supp. 481(N.D. Tex 1997) the magistrate judge held that the physical injury had to be an "observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks." *Id.* at 486. Injuries for which free world individuals would not seek emergency room or other professional medical care are not significant. *Id.* An injury that normal people treat with "over-the-counter drugs, heating pads, rest, etc. do not fall within the parameters of 1997e(e)." *Id.* The only injury specified by Whitney that can be

6

attributed to Jackson are bruises. The claimed bruises are not a sufficient injury to support a claim for compensatory damages nor will they support a claim for excessive use of force.

The undersigned recommends that the defendant Jackson's motion for summary judgment be granted and this action finally dismissed with prejudice.

The parties are referred to 28 U.S.C. 636(b)(1) and Local Rule 72.2(D) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within ten days of this date. Failure to file written objections to the proposed finding and recommendations contained in this report within ten days from the date of filing will bar an aggrieved party from challenging on appeal both the proposed factual findings and the proposed legal conclusions accepted by the district court *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Plaintiff is directed to acknowledge receipt of this report and recommendation by signing the enclosed acknowledgment form and returning it to the court within ten days of this date. Plaintiff is warned that failure to comply with the requirements of this paragraph may lead to the dismissal of this lawsuit under F.R.Civ.P. 41(b) for failure to prosecute and for failure to comply with an order of the court.

This the 13th day of July, 2007.

/s/ JERRY A. DAVIS  
UNITED STATES MAGISTRATE JUDGE